Earl RINGO, Jr., Appellant.

v.

STATE of Missouri, Respondent.

No. SC 84987.

Supreme Court of Missouri,
En Banc.

Nov. 4, 2003.

Rehearing Denied Dec. 23, 2003.

Melinda K. Pendergraph, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie M. Morrell, Asst. Atty. Gen., Jefferson City, for Respondent.

RONNIE L. WHITE, Chief Justice.

## I.

After granting defense counsel's motion for a change of venue, a jury in Cape Girardeau County convicted Appellant, Earl Ringo, Jr., of two counts of first-degree murder and imposed two death sentences. This Court upheld Appellant's conviction on direct appeal.[1] Appellant, pro se, moved for post-conviction relief under Rule 29.15 alleging constitutionally ineffective assistance of counsel on fifteen grounds.

Appointed counsel filed an amended Rule 29.15 motion raising only five claims. The motion court denied three of the claims without hearing. The first was a claim that trial counsel failed to secure Appellant's right to a fair, representative and impartial jury. The second claim asserted trial counsel failed to object to the trial court's alleged improper response to the jury's question regarding sentencing, and the third was trial counsel's failure to object to alleged prosecutorial misconduct. Motion counsel presented no evidence on the fourth claim alleging the death penalty was unconstitutional, and it too was denied. Finally, the motion court denied relief on the fifth claim alleging that trial counsel failed to present necessary expert

---

1. *State v. Ringo,* 30 S.W.3d 811 (Mo. banc 2000).

testimony in both the guilt and penalty phases of his trial.

Appellant raises four of these five points of error on appeal and adds a fifth claim alleging Eighth and Fourteenth Amendment violations for motion counsel's failure to raise all fifteen points that were originally raised by Appellant in his pro se motion in the amended 29.15 motion.[2] This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 10; order of June 16, 1988. Affirmed.

## II.

■ Reviewing points on appeal from the denial of post-conviction relief is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous.[3] "The findings and conclusions of the motion court 'are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite impression that a mistake has been made.' "[4]

■ An evidentiary hearing on a Rule 29.15 post-conviction relief motion is only required if: (1) the motion alleges facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the case files and the records; and (3) the matters of which the movant complains have resulted in prejudice.[5] To obtain an evidentiary hearing for claims related to ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing that counsel's perform-

ance did not conform to the degree of skill, care and diligence of a reasonably competent attorney and that the movant was thereby prejudiced.[6] "To demonstrate prejudice, Appellant must allege facts showing a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."[7] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[8] "An evidentiary hearing may only be denied when the record conclusively shows that the movant is not entitled to relief."[9]

## III.

This Court has already resolved the issue surrounding Appellant's newly added claim of ineffective assistance for motion counsel's alleged failure to raise all fifteen points originally raised by Appellant in his pro se motion. The so-called "materially incomplete action" claim does not fall under the limited scope of an abandonment analysis and is not cognizable under an ineffective assistance argument because there is no recognized constitutional right to counsel in a post-conviction proceeding.[10]

## IV.

Appellant claims Fifth, Sixth, Eighth and Fourteenth Amendment violations in association with the three points denied by the motion court without hearing. The trial court had ruled that Appellant was not entitled to a hearing on these issues

---

2. This appeal does not raise the constitutionality of the death penalty.

3. Rule 29.15(k); *State v. Kinder,* 942 S.W.2d 313, 333 (Mo. banc 1996).

4. *Ervin v. State,* 80 S.W.3d 817, 821 (Mo. banc 2002).

5. *Wilkes v. State,* 82 S.W.3d 925, 927 (Mo. banc 2002); *State v. Brooks,* 960 S.W.2d 479, 497 (Mo. banc 1997).

6. *Id.*

7. *Id.,* citing to, *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984).

8. *Id.*

9. Rule 29.15(h); *Wilkes,* 82 S.W.3d at 927.

10. *Winfield v. State,* 93 S.W.3d 732, 738–39 (Mo. banc 2002).

because the record conclusively showed that he was not entitled to relief.

The first of these three points, trial counsel's alleged failure to object and request appropriate supplemental jury instruction, was raised for plain error and denied on direct appeal.[11] Appellant is correct that the denial of a plain error claim on direct appeal is not dispositive of the question whether counsel was ineffective in failing to preserve the issue as to which plain error was not found.[12] However, on direct appeal this Court found no error, plain or otherwise, with the trial court's decision to restrict jury instructions to those already given.[13] Defense counsel cannot be found to be ineffective for failing to object to the trial court's response to the jury when the response not to supplement the jury instructions was not in error. This point, having already been determined on direct appeal cannot be raised again in a post-conviction relief motion.[14]

■ Appellant's second point, concerning prosecutorial misconduct, was not raised on direct appeal as the motion court had erroneously determined when it denied a hearing on this issue.[15] However,

even assuming, arguendo, that the prosecutor behaved as alleged, Appellant still failed to meet the standard for requiring an evidentiary hearing because Appellant only offers conclusory statements, not facts, that could demonstrate how these remarks and gestures could have prejudiced the outcome of the trial. "[C]ourts will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." [16]

■ Appellant's third point denied without evidentiary hearing contends that defense counsel was ineffective for agreeing to a transfer of venue to Cape Girardeau County, because this county had a history of under-representing African Americans in violation of fair cross-section requirements. Appellant also claims defense counsel was ineffective for failing to object to his petit jury panel, which was allegedly under-represented African–Americans. Appellant claims prejudice because he was tried by an "all-white jury" and "was more likely to be sentenced to death and convicted for the killing of the white victims." [17]

■ "A criminal defendant does have a constitutional right to the unbiased selec-

11. While engaged in penalty phase deliberations, the jury sent a note to the court reading: "If we give death on Count I, and Life without possibilitie [sic] of parole on Count II, How will the counts be carried out? Is there a chance that our Count I verdict will/could be changed. [sic]" After conferring with the state and defense counsel, the judge stated her inclination was simply to inform the jury she could give no further instructions. The note was read into the record, and both the state and defense counsel agreed to the judge's suggestion. At that point, the judge sent a written response to the jury stating, "I can give you no further instructions at this time." *Ringo*, 30 S.W.3d at 818.

12. *Deck v. State*, 68 S.W.3d 418, 426–27 (Mo. banc 2002).

13. *Ringo*, 30 S.W.3d at 818.

14. *Leisure v. State*, 828 S.W.2d 872, 874 (Mo. banc 1992).

15. Appellant alleged that the prosecuting attorney made various improper comments and gestures during the trial, including rolling his eyes, making hand gestures, whispering loudly at bench conferences, pacing the floor during defense counsel's examination of witnesses, showing autopsy photographs to members of the gallery, and speaking to co-counsel during a defense witness's testimony.

16. *Maynard v. State*, 87 S.W.3d 865, 866 (Mo. banc 2002).

17. Appellant alleged in his amended motion the following facts to support his claim: 1) 4.5 % of the people in Cape Girardeau County were African–American; 2) four out of 163 venirepersons called for appellant's case were African–American; 3) out of 18 selected crim-

tion of a jury drawn from a cross-section of the community." [18] "To establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process." [19] "Unless it is shown that the difference between the percentage of the individuals in the identifiable group and those within the venires as a whole is greater than 10%, a prima facie case has not been made." [20]

Appellant failed to demonstrate a competent statistical analysis of the venires in Cape Girardeau County establishing systematic-underrepresentation. Appellant's motion not only failed to examine all of the venires assembled near the time of his trial, but simply selected a few cases tried by the public defender's office that had no statistical correlation or validity. Without alleging facts showing what the venires' makeup was in the appropriate time period, and over time, Appellant cannot show that there was in fact, a history of under-representation. Even if his individual panel was underrepresented by the African–

American community, "a single panel that fails to mirror the make-up of the community is insufficient to establish a prima facie case of systematic exclusion." [21]

Appellant's fair cross-section claim is meritless. Trial counsel cannot be found to have been ineffective for failing to object to the transfer of venue and Appellant's petit jury panel, because "[c]ounsel cannot be deemed ineffective for failing to raise a nonmeritorious claim." [22]

## V.

Finally, Appellant claims Sixth, Eighth and Fourteenth Amendment violations for trial counsel's alleged failure: (1) to adequately investigate and present expert testimony during the guilt phase of the trial establishing diminished mental capacity to deliberate, negating this element of first degree murder; and (2) to adequately investigate and present mitigating evidence during the penalty phase of the trial regarding childhood abuse and Appellant's mental state, which could have resulted in delivery of a life sentence as opposed to the death penalty. Appellant seeks a new trial on the basis of the first claim and/or a new penalty phase on the basis of the second claim.

To establish ineffective assistance of counsel, Appellant bears a heavy burden to overcome the strong presumption that counsel provided competent assistance. [23]

inal cases tried by the public defender's office in Cape Girardeau County between 1996–1998 only 16.6% of the "petit jury panels" had adequate representation by African–Americans; 4) appellant's trial counsel were working with counsel appointed in the Terrence Anderson case and knew that Anderson's attorneys were challenging the jury selection process in Cape Girardeau County including raising a "fair cross-section" claim; and 5) no African–Americans were seated on appellant's jury.

18. *State v. Kinder*, 942 S.W.2d at 337.

19. *State v. Hofmann*, 895 S.W.2d 108, 111 (Mo.App.1995).

20. *Id.*

21. *State v. Ringo*, 30 S.W.3d 811, 820 (Mo. banc 2000); *State v. Garrett*, 627 S.W.2d 635, 639 (Mo. banc 1982).

22. *State v. Nunley*, 923 S.W.2d 911, 924 (Mo. banc 1996); *State v. Six*, 805 S.W.2d 159, 171 (Mo. banc 1991).

23. *Middleton v. State*, 103 S.W.3d 726, 732 (Mo. banc 2003).

Appellant must identify specific acts or omissions of counsel falling below an objective standard of reasonableness, and the "court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance." [24]

■■■■■ In terms of an attorney's duty to investigate, an investigation need only be adequate under the circumstances, and "the reasonableness of a decision not to investigate depends upon the strategic choices and information provided by the defendant." [25] "When counsel knows generally the facts that support a potential defense, 'the need for further investigation may be considerably diminished or eliminated altogether.'" [26]

■■■■■ "The selection of witnesses and the introduction of evidence are questions of trial strategy and the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel." [27] To pursue one evidentiary course to the exclusion of another as an informed strategic decision not to offer certain evidence is not ineffective assistance. [28]

■■■■ Trial counsel engaged several experts in preparation for trial: Dr. Wanda Draper, a child development expert; Dr. Robert Briggs, a psychologist; and Dr. Wheelock, a learning disorder expert. Counsel also retained the services of a social worker, James Dempsey, to investigate Appellant's background through family interviews.

Dr. Draper outlined the significant life events of Appellant, including childhood abuse. Dr. Briggs determined that Appellant was of normal intelligence, that he had no organic brain damage, that he had a mild to moderate impairment in attention and concentration, and that he tested positive in scores related to Post–Traumatic Stress Disorder (PTSD) on the Minnesota Multiphasic Personality Inventory. No diagnosis of PTSD or of diminished capacity was made, and trial counsel determined that Dr. Briggs' testimony would not reasonably assist them with a defense of diminished capacity. While Dr. Briggs' written report was not provided until sometime later, motion court testimony reveals that defense counsel was informed by Dr. Briggs that it might be prudent for a clinical psychologist to review appellant's personality assessment. [29]

Appellant seizes upon Dr. Briggs' suggestion regarding further personality assessment as the basis of his contention that counsel was ineffective for not securing additional experts to fully investigate and testify regarding his alleged personality disorder and how it might have affected his ability to deliberate prior to committing the murder. Dr. Robert Smith, an expert retained by post-conviction counsel, subsequently diagnosed appellant with PTSD, and Appellant contends this evidence should have been introduced during the both guilt and penalty phases of the trial. Appellant cites to *Wiggins v. Smith,* 539 U.S. ——, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), among other cases, for the proposition that the scope of investigation by trial counsel was unreasonably deficient and constitutionally ineffective. [30]

24. *Id.*

25. *Sanders v. State,* 738 S.W.2d 856, 858 (Mo. banc 1987).

26. *Id.*

27. *Id.*

28. *State v. Simmons,* 944 S.W.2d 165, 181 (Mo. banc 1997).

29. Dr. Briggs's report also definitely states, "I would not recommend retesting this patient from a neuropsychological point of view unless, of course, significant changes warrant further evaluation."

30. Appellant also cites to *Catalan v. Cockrell,* 315 F.3d 491 (5th Cir.2002); *State v. Howard,* 805 So.2d 1247, 1257–59 (La.App.2002); *State v. Coney,* 845 So.2d 120 (Fla.2003);

The motion court found that Dr. Smith's expertise would not have assisted in the defense, that sufficient evidence was presented from which a jury could have found a lack of deliberation and convicted Appellant of second degree murder, and that rejection of the lesser conviction did not establish that counsel was ineffective. This Court agrees.

Trial counsel satisfied its duty of investigation, employing four separate experts to examine the various aspects of Appellant's mental and social development. Where trial counsel has, as here, made reasonable efforts to investigate the mental status of defendant and has concluded that there is no basis in pursuing a particular line of defense, counsel should not be held ineffective for not shopping for another expert to testify in a particular way.[31] Counsel's investigation in this case is in no way comparable to facts in *Wiggins* where it was held that defense counsel's decision to deny guilt as opposed to introducing mitigating evidence was unreasonable because counsel had essentially "abandoned their investigation of petitioner's background after having acquired only a rudimentary knowledge of his history from a narrow set of sources."[32]

Appellant also finds fault with defense counsel's decision not to present the testimony of Dr. Draper regarding his abusive childhood during the penalty phase of the trial. Defense counsel elected to put four members of Appellant's family on the stand during penalty phase. Defense counsel testified at hearing that the decision was made to emphasize the testimony of Appellant's mother, a person experiencing Appellant's abuse first-hand with him, and it was believed that Dr. Draper's testimony may have conflicted with and possibly discredited her testimony. It was a reasonable decision not to admit contradictory testimony, and, as already noted, the decision to pursue one evidentiary course to the exclusion of another as an informed strategic decision is not ineffective assistance.

## VI.

The judgment is affirmed.

WOLFF, BENTON, LAURA DENVIR STITH, PRICE and LIMBAUGH, JJ., and RAHMEYER, Sp.J., concur.

TEITELMAN, J., not participating.

**STATE ex rel. Anthony ASHFORD, Petitioner,**

v.

---

*Boyko v. Parke*, 259 F.3d 781, 784 (7th Cir. 2001); *Seidel v. Merkle*, 146 F.3d 750, 756 (9th Cir.1998). All of these cases are distinguishable from the present case in terms of the lower level of investigation conducted by defense counsel.

**31.** *State v. Mease*, 842 S.W.2d 98, 114 (Mo. banc 1992); *State v. Taylor*, 929 S.W.2d 209, 225 (Mo. banc 1996); *State v. Kenley*, 952

S.W.2d 250, 268 (Mo. banc 1997); *Lyons v. State* 39 S.W.3d 32, 41 (Mo. banc 2001).

**32.** *Wiggins*, 123 S.Ct. at 2536–2539. Defense counsel in *Wiggins* relied on limited IQ testing, a pre-sentencing investigation, and a Department of Social Services Record completely missing significant events in the defendant's life history. There was also evidence of counsel's inattention to performing

750

Larry ROWLEY, Superintendent,[1]
Respondent,

and

Circuit Court of Cole County,
Respondent.

No. SC 85171.

Supreme Court of Missouri,
En Banc.

Nov. 4, 2003.

Rehearing Denied Dec. 23, 2003.

a complete investigation as opposed to making reasonable strategic decisions. *Id.*

