# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4005

_____

|  |  |  |
|---|---|---|
| Earl Ringo, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Donald Roper, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 25, 2006
Filed: January 4, 2007

_____

Before ARNOLD, BYE, and MELLOY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Earl Ringo, a prisoner under sentence of death in the State of Missouri, appeals the denial by the district court[1] of his petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254. We affirm.

I.

Eight years ago, Mr. Ringo and Quentin Jones shot a restaurant employee and the driver of a delivery truck to death in the course of a robbery. Mr. Jones pleaded

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

guilty to murder, robbery, and armed criminal action. At Mr. Ringo's trial, the state presented evidence that Mr. Ringo planned the robbery, convinced Mr. Jones to participate, was the triggerman for one of the two murders, and directed the other murder. Mr. Ringo was convicted of two counts of first-degree murder. At the penalty phase of his trial, in an effort to present mitigation evidence, Mr. Ringo's mother, sister, and both grandmothers testified that Mr. Ringo had a troubled childhood. The jury nevertheless recommended a sentence of death on both counts, and the trial court sentenced him accordingly. The Missouri Supreme Court upheld Mr. Ringo's conviction on direct appeal, *State v. Ringo*, 30 S.W.3d 811 (Mo. 2000), *cert denied*, 532 U.S. 932 (2001) (*Ringo I*).

Mr. Ringo petitioned the trial court for postconviction relief claiming, *inter alia*, that his trial attorneys were ineffective and that the trial court's refusal to grant discovery regarding the racial and gender composition of his grand jury violated his due process rights. The trial court rejected these claims and the Missouri Supreme Court affirmed. *Ringo v. State*, 120 S.W.3d 743 (Mo. 2003) (*Ringo II*).

After exhausting his state remedies, Mr. Ringo filed a petition for relief under § 2254(a). The district court denied the petition but granted Mr. Ringo a certificate of appealability with respect to his two ineffective-assistance-of-counsel claims, and we expanded the certificate to include his discovery claim.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern our review. Under AEDPA, we cannot grant a writ of habeas corpus to Mr. Ringo unless the Missouri courts' treatment of his federal claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d)(1). A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

We consider first Mr. Ringo's two ineffective assistance claims. It is familiar law that a claim of ineffective assistance of counsel requires proof that defense counsel's representation fell below an objective standard of reasonableness and thereby prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1994). To prevail here, Mr. Ringo must do more than "show that he would have satisfied *Strickland* 's test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Under AEDPA, he must establish that the state court " applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699.

## A.

Mr. Ringo claims that counsel was ineffective in failing to investigate and to present testimony at both the guilt and penalty phases of his trial that he suffered from post-traumatic stress disorder (PTSD). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

Dr. Robert Smith, a clinical psychologist, diagnosed Mr. Ringo with PTSD after the trial. Mr. Ringo contends that counsel should have discovered that he had PTSD before the trial and presented evidence of the diagnosis. He maintains that this evidence would have supported a diminished capacity defense at the guilt phase of his trial and would also have provided additional mitigation evidence at the penalty phase that would have had a reasonable probability of causing the jury not to recommend a death sentence. The Missouri Supreme Court rejected this argument, holding that Mr. Ringo had not met his burden under *Strickland* of showing that counsel performed

deficiently, *Ringo II*, 120 S.W.3d at 748-49, and the district court concluded that the state court's holding was reasonable.

Mr. Ringo asserts that counsel had evidence that he had PTSD and failed to investigate this possibility thoroughly. Mr. Ringo points out that before trial counsel asked Dr. Robert Briggs, a neuropsychologist, to perform a mental examination of Mr. Ringo. After examining Mr. Ringo and having him complete a battery of tests, Dr. Briggs gave an oral report of his findings to counsel. (Although Dr. Briggs also prepared a written report, the parties agreed at oral argument that there was no evidence that counsel had that report before trial.)

Based on the testing, Dr. Briggs concluded that Mr. Ringo had normal neuropsychological functioning and intelligence. As part of his investigation, Dr. Briggs administered the standardized Minnesota Multiphasic Personality Inventory (MMPI-2) to Mr. Ringo. The state court found that Dr. Briggs told counsel that Mr. Ringo had "tested positive" on MMPI-2 scores "related to" PTSD and advised that it "might be prudent" for a clinical psychologist to review the MMPI results. *See Ringo II*, 120 S.W.3d at 748. In his claim, Mr. Ringo argues that counsel was ineffective in not following Dr. Briggs's suggestion and seeking the opinion of a clinical psychologist, particularly as to PTSD.

The Missouri Supreme Court disagreed. The court first concluded that counsel reasonably determined that Dr. Briggs's testimony would not assist them with a diminished capacity defense. Noting that counsel had engaged a child development expert, a psychologist (Dr. Briggs), a learning disabilities expert, and a social worker (who interviewed family members), the state court concluded that counsel had "made reasonable efforts to investigate" Mr. Ringo's mental status. The court then stated that "[w]here trial counsel has, as here, made reasonable efforts to investigate the mental status of defendant and has concluded that there is no basis in pursuing a particular

line of defense, counsel should not be held ineffective for not shopping for another expert to testify in a particular way." *Ringo*, 120 S.W.3d at 749.

We do not think that counsel must search for an expert until finding one who will render the desired opinion, but we also believe that counsel in a death penalty case generally should obtain an expert opinion on a significant issue that can be addressed only by someone with technical expertise. (Although the district court found that counsel had asked Dr. Briggs for his opinion as to whether Mr. Ringo had PTSD, the state court did not make that finding, and we do not see evidence for that specific request in the record.) As the state court notes, Dr. Briggs did not conclude that Mr. Ringo had PTSD, but he did report that Mr. Ringo had "tested positive" on MMPI-2 scores "related to" PTSD and also suggested that counsel consult a clinical psychologist to evaluate Mr. Ringo's MMPI-2 results.

The Supreme Court has indicated that a failure to investigate based on "inattention, not reasoned strategic judgment" is unreasonable, as is abandoning an "investigation at an unreasonable juncture, making a fully informed decision ... impossible." *Wiggins v. Smith*, 539 U.S. 510, 526, 527-28 (2003). In *Wiggins*, 539 U.S. at 526-27, the Court also cautioned the courts not to invoke "strategy" as a "post-hoc rationalization of counsel's conduct, [rather] than an accurate description of their deliberations." Here the state court did not make specific findings regarding counsel's deliberations, and the only evidence we have located in the record regarding their thinking appears in counsel's testimony at the post-conviction hearing. Mary Ruth O'Neill, Mr. Ringo's counsel in the guilt phase of the trial, testified that by the time she realized that she should consult an expert to determine whether Mr. Ringo had PTSD, she did not think that she had time to do so, and she did not believe that the trial court would grant her a continuance if she had asked for one. (The trial occurred about nine months after Mr. Ringo's arrest and about eleven months after the crime.) Ms. O'Neill testified further that she could not present a diminished-capacity defense without the assistance of an expert. Mr. Ringo's attorney at the penalty phase,

Kimberly Shaw, did not think that there was reason to believe that Mr. Ringo had acted with diminished capacity. According to her testimony, Dr. Briggs was hired to provide a neuropsychological examination and determine Mr. Ringo's cognitive abilities. She agreed that Dr. Briggs did not specialize in "mental illnesses *per se*" and stated that he was "more into physical problems with the brain." Ms. Shaw observed that although Dr. Briggs might not have been able to assist her as an expert regarding mental diseases or defects, he may have been able to let her know whether certain issues "need[ed] to be looked at." Ms. Shaw remembered that Dr. Briggs had told her his findings over the phone, but had forgotten many of them and did not recall Dr. Briggs saying that Mr. Ringo had "tested positive" on MMPI-2 scores "related to" PTSD or suggesting that it "might be prudent" for counsel to have a clinical psychologist review the MMPI-2 results.

In *Wiggins*, 539 U.S. at 527, the Supreme Court instructed that when determining whether counsel's investigation was adequate, a court must consider whether the evidence that counsel has "would lead a reasonable attorney to investigate further." *Id.* In that case, the Court held that counsel's failure to investigate was unreasonable because the information they already had regarding the defendant's background contained leads that needed to be explored before they could make an "informed choice" regarding strategy. Were we reviewing this claim *de novo*, we believe that a good case could be made that counsel here had a significant "lead that should have been explored," but "chose to abandon their investigation at an unreasonable juncture." *See id.*

First, we note that the suggestion to investigate further came from an expert whom counsel respected and had hired. In addition, we believe that other aspects of this case gave counsel reason to heed Dr. Briggs's suggestion: We think that Dr. Briggs's finding that Mr. Ringo had positive signs of PTSD would be likely to "ring true" to counsel, who knew that Mr. Ringo suffered severe and repeated trauma during his youth. They knew, for example, that his mother's boyfriend had beaten

-6-

Mr. Ringo in the head with an aluminum baseball bat and prevented him from returning to school for two or three weeks; the defendant was not allowed to seek medical treatment for the injury, and his mother was threatened with death if she told anyone what had happened. We think that the relationship between such experiences and PTSD, a mental impairment caused by trauma, would have been apparent to most attorneys.

We also believe that a reasonable attorney might well have further investigated a possible PTSD diagnosis because of Mr. Ringo's statement to the police and counsel's related trial strategy. Counsel planned to show during the guilt phase of the trial that Mr. Ringo did not deliberate before shooting the driver of the delivery truck; according to Mr. Ringo's statement, he shot the truck driver because he was startled as he entered the back door of the restaurant and the driver charged at him. Trial counsel testified that she was familiar with PTSD, and, in any event, we believe that many attorneys would have known or easily discovered that a PTSD diagnosis could support a challenge to the element of deliberation under the circumstances. We also think that a reasonable lawyer might well have concluded that a PTSD diagnosis could help during the penalty phase; a jury might view a defendant with PTSD as less culpable or give more weight to what the district court described as Mr. Ringo's "horrific childhood" if it resulted in PTSD.

Our belief that a good argument could be made that counsel should have investigated the PTSD diagnosis, however, does not resolve the issue. Regardless of how we might decide the claim in the first instance, our actions are tightly circumscribed by AEDPA. And after carefully reviewing the record and the precedent, we cannot say that Mr. Ringo has shown that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." In *Strickland,* 466 U.S. at 689, the Supreme Court set out a highly deferential standard for reviewing counsel's conduct, including a presumption of reasonableness. And we note that this is not a case where counsel failed to investigate the defendant's family

background or to consult with any mental health professionals. As the state court found, counsel hired Dr. Briggs, a neuropsychologist, who noted positive findings for PTSD but did not make a diagnosis of that condition. Dr. Briggs also reported to counsel that he had not found evidence of a neurological disorder and that he did not think that further testing would be needed. Though Dr. Briggs suggested that counsel consult a clinical psychologist, his recommendation was not a strong one; quite the contrary, it was decidedly mild: Dr. Briggs stated only that it "*might* be prudent" to obtain a clinical psychologist's opinion. Even if we think that the circumstances of the case warranted heeding Dr. Briggs's advice, we cannot say that the state court unreasonably applied Supreme Court precedent in concluding that counsel was not required to do what Dr. Briggs told them once in a phone call "might be prudent." We therefore conclude that the Missouri Supreme Court did not unreasonably apply Supreme Court precedent when it determined that counsel was not required to follow Dr. Briggs's suggestion, and we thus deny the claim.

Though we need not decide the issue of prejudice, we think that Mr. Ringo faced significant obstacles in meeting this requirement. We view the burden of showing prejudice here as twofold: First, Mr. Ringo would have to show that it was reasonably probable that if counsel had retained a clinical psychologist, the psychologist would have diagnosed him with PTSD. We note that Mr. Ringo's trial counsel testified at the post-conviction hearing that it was often difficult to hire Dr. Smith because of his busy schedule, Dr. Smith did not testify about whether other psychologists were likely to reach the same conclusion that he did, and the clinical psychologist who testified for the state at the post-conviction hearing (not surprisingly, perhaps) disagreed with Dr. Smith's PTSD diagnosis. If Mr. Ringo overcame this initial burden, he would have to establish that there is a reasonable probability that the PTSD evidence would have altered the outcome of the guilt or penalty phase of the trial. And even if Mr. Ringo met both of these requirements, of course, he would then have to show that the state court's conclusion that he was not

prejudiced "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d).

B.

Mr. Ringo also argues that counsel's performance was deficient at the penalty phase because they failed to offer mitigation evidence through the testimony of Dr. Wanda Draper, a childhood development specialist. He contends that Dr. Draper would have testified about the violence and neglect that he suffered during his childhood, matters that might have made the jury less likely to recommend the death penalty in his case. The Missouri Supreme Court rejected this claim, holding that counsel made an "informed strategic decision" not to call Dr. Draper. *Ringo II*, 120 S.W.3d at 749. The federal district court held that the state court's conclusion was reasonable and thus must be upheld under AEDPA. We agree.

After investigating Mr. Ringo's childhood, counsel hired Dr. Draper and received a report from her. Counsel called Mr. Ringo's mother, sister, and two grandmothers as witnesses during the penalty phase to present mitigating evidence concerning his difficult childhood. Ms. Shaw, the attorney who represented Mr. Ringo in this phase of the trial, testified at the post-conviction hearing that she chose not to call Dr. Draper as a witness because she wanted the emphasis during the penalty phase to be on Mr. Ringo's mother, and counsel was afraid that Dr. Draper's testimony would not "flow" with his mother's testimony. Dr. Draper's report included references to the limited parenting skills of Mr. Ringo's mother, and the Missouri Supreme Court interpreted counsel's testimony as expressing concern that Dr. Draper's testimony might have "conflicted with and possibly discredited" the testimony of Mr. Ringo's mother, who had experienced [the defendant's] abuse "first-hand with him." The state court concluded that counsel made a reasonable and informed strategic decision not to present Dr. Draper's testimony. *Ringo II*, 120 S.W.3d at 749.

-9-

Although counsel's decision not to call Dr. Draper might appear unwise in hindsight, as we have said, a court's review under *Strickland* is highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Courts instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted.) Given this deferential standard, as well as the strictures of AEDPA, we conclude that the Missouri Supreme Court's holding that counsel did not act ineffectively was reasonable.

Mr. Ringo argues that our decision in *Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002), is dispositive of this case. In *Simmons*, we found counsel ineffective for failing to present evidence of the defendant's traumatic childhood at the penalty phase, but in that case counsel did not present any evidence at all of the defendant's background. *Id.* at 936-40. Here, by contrast, counsel presented considerable evidence of Mr. Ringo's background through the testimony of his family members. Though the evidence was not as detailed as it could have been, the family's testimony addressed the abuse that Mr. Ringo suffered as a child (including the beating with a baseball bat), his family's poverty, and his reaction to his father's death.

Mr. Ringo also maintains that the district court's decision denying relief conflicts with the Supreme Court's decisions in *Rompilla v. Beard*, 125 S. Ct. 2456 (2005), *Wiggins*, 539 U.S. at 524, and *Williams v. Taylor*, 529 U.S. 362 (2000). But in all of these cases counsel were ineffective because they failed to conduct a reasonable investigation. In *Rompilla*, 125 S. Ct. at 2464, counsel conducted only a belated and cursory examination of an easily-accessible court file regarding the defendant's prior rape conviction despite knowing that the prosecution, in the seeking the death penalty, would rely on that conviction and "would emphasize [the

defendant's] violent character" by introducing the rape victim's testimony from the earlier trial. In *Wiggins*, 539 U.S. at 524-25, 534, the Court held that counsel should have investigated the defendant's background further based on materials that were in their possession. And in *Williams*, 529 U.S. at 395, the Court concluded that counsel were ineffective in failing to conduct an investigation that would have uncovered evidence of the defendant's "nightmarish childhood" because they mistakenly believed that they were barred by law from access to the relevant records. In this case, however, counsel conducted a full investigation into Mr. Ringo's childhood, including each potential mitigating factor that Mr. Ringo contends should have been explored.

Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case.

### III.

Finally, Mr. Ringo maintains that the state trial court erred by denying his discovery request for the racial and gender composition of the grand jury that indicted him. According to Mr. Ringo, the court's denial effectively foreclosed his opportunity to raise a claim that the grand jury pool did not reflect a fair cross-section of the community, as the equal protection clause of the fourteenth amendment requires. *See Castaneda v. Partida*, 430 U.S. 482, 494 (1977).

The Missouri Supreme Court concluded that Mr. Ringo's claim was procedurally barred because he was not tried pursuant to a grand jury indictment but pursuant to a substitute information and he did not raise a due process challenge to that substitution. *Ringo I*, 30 S.W.3d at 820. The court further concluded that even if Mr. Ringo's claim was not barred, the trial court's denial of discovery would not warrant relief because the evidence that the defendant sought did not address the makeup of grand juries over an extended period of time and thus could not raise an

-11-

inference of systematic exclusion. *Id.* The district court held that this second conclusion was not objectively unreasonable. We agree and thus have no occasion to address the procedural default issue.

To establish a *prima facie* fair cross-section claim, Mr. Ringo needed to identify "a recognizable, distinct class," show substantial underrepresentation of that class of persons in jury pools over a "significant period of time," and prove that the jury selection process is "susceptible of abuse or is not racially neutral." *Castaneda*, 430 U.S. at 494. The diversity of Mr. Ringo's particular grand jury is not relevant to any of these three matters. Even if Mr. Ringo had shown that the particular grand jury that indicted him was not diverse by race or gender, this could not form the basis for a valid constitutional claim. *See Cassell v. Texas*, 339 U.S. 282, 287 (1950).

Furthermore, Mr. Ringo had other information available to him that was relevant to a *Castaneda* claim. *See Ringo I*, 30 S.W.3d at 818-19. In response to Mr. Ringo's discovery requests, the trial court supplied him with a transcript of the questioning of prospective grand jurors and the manual of grand jury selection procedures. The judge also allowed Mr. Ringo's counsel to question the prosecutor, under oath, about grand jury selection procedures. Counsel failed to ask any questions regarding the racial- or gender-make up of the grand jury pool despite having the chance to do so.

As the Missouri Supreme Court found, Mr. Ringo also failed to avail himself of numerous alternative sources of evidence that might have been useful in proving systemic discrimination under *Castaneda*. *Ringo I*, 30 S.W.3d at 819-20. Mr. Ringo could have deposed the circuit clerk, jury commissioners, or data processing personnel to ask about grand jury selection procedures, but he did not. *Id.*

## IV.

For the reasons stated, we affirm the district court's denial of Mr. Ringo's § 2254 petition.

_____