

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **EDDIE B. LINZIE,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD87336** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | |
| **STATE OF MISSOURI,** | ) | **September 30, 2025** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
**Honorable Jeff Harris, Judge**

**Before Division Three: Mark D. Pfeiffer, Presiding Judge,**
**Cynthia L. Martin, Judge, and Janet Sutton, Judge**

Eddie Linzie (Linzie) appeals the judgment of the Circuit Court of Boone County (motion court), which denied his amended Rule 29.15[1] motion for postconviction relief after an evidentiary hearing. In his sole point on appeal, Linzie asserts the motion court clearly erred in denying the claim in his amended motion that his trial counsel was ineffective for failing to object to the testimony of a police department employee that she was familiar with Linzie, having seen him in and around the police station numerous times. Finding no clear error, we affirm.

---

[1] Rule references are to the Missouri Supreme Court Rules (2023).

**Factual and Procedural Background[2]**

In the early morning hours of February 24, 2020, two violent altercations occurred in the lobby of the downtown Columbia Post Office[3] between Linzie and Victim. In the first confrontation around midnight, Victim stabbed Linzie in the forearm. Then, for thirty-five minutes starting at 1:00 a.m., surveillance camera footage captured Linzie moving his arm in a motion that appeared to be practicing or mimicking a downward strike, retrieving a pipe, and then returning to the Post Office. Linzie reentered the Post Office and while inside, struck Victim in the head with the pipe. Victim sustained a serious head injury, later diagnosed as a depressed skull fracture. Linzie then ran out of the Post Office, disposed of the pipe in a dumpster, and continued on his way.

After the altercation, Victim left the Post Office and walked directly across the street to the Columbia Police Department. Victim entered the police department carrying a bloodied knife and he had a large amount of blood on his face and clothing. Victim spoke with K.G., who was working at the front desk. K.G. testified as follows:

> Q: Did you hear that night a description of the other individual involved with the man who came into the lobby?
>
> A: Yes.

---

[2] "On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the underlying criminal conviction as those facts bear upon the motion court's judgment." *Verge v. State*, 695 S.W.3d 290, 292 n.1 (Mo. App. W.D. 2024) (citation omitted).

[3] As we noted in Linzie's direct appeal, no challenge was made in the trial court or on appeal respecting jurisdiction. Our record does not reveal whether the U.S. Post Office where the crime took place was owned by the United States, or whether it was leased. *See State ex rel. Laughlin v. Bowersox*, 318 S.W.3d 695, 698-700 (Mo. banc 2010) (holding that, because the crime in that matter had occurred in a U.S. Post Office that had been purchased by the United States with consent of the legislature and the state ceded jurisdiction over the land to the federal government, federal jurisdiction was exclusive).

Defense Counsel:  Objection.  I'll withdraw it.

Q:  Did that description sound like anyone you knew?

A:  Yes.

Q:  Who did it sound like?

A: It sounded like it was Eddie Linzie.

Q:  Had you seen Eddie Linzie before?

A:  Yes.

Q:  Approximately how many times?

A:  I would say at least a dozen times or more.

Q:  And where had you seen him?

A:  I'd seen him inside the lobby, also outside of the police department. I've seen him just in the general vicinity.  Sometimes people would gather outside over by the Post Office.  Seen him in that area as well.

Q:  And what, if anything, stood out to you about some of the times you'd seen Eddie Linzie in the past?

A:  He always wore the same brown boots and he had a lot of items with him and he did have with him oftentimes a pole or like a stick, something like that, like a—yeah, it was like a pole.

An officer responded to the Post Office, and when he entered, the officer observed a large amount of blood in one corner of the lobby and a blood trail leading to the door.  The officer secured the scene and took photographs of it.

Around 2:30 a.m., Linzie was located walking in an alleyway behind a building.  Linzie had a makeshift tourniquet on his arm, and Linzie indicated to a police officer that he had been stabbed.  After EMS treated Linzie, he voluntarily agreed to speak with a detective and he was advised of his *Miranda* rights.[4]  Linzie told the detective that he had been sleeping at the Post

---

[4]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

Office for the past couple of nights, that he argued with Victim there that night, and that Victim stabbed Linzie in the forearm. Linzie said that Victim told him to get out, cornered him swinging a knife, and stabbed Linzie in the forearm. Linzie admitted that after he was stabbed, he left the Post Office, got a pipe, returned, and hit Victim in the head with the pipe while the man was lying on the ground. Linzie described the pipe and where he hid it, and officers were able to locate the pipe.

The jury was instructed on self-defense, and defense counsel argued that Linzie acted in self-defense when he returned to the Post Office. The jury found Linzie guilty of first-degree assault and armed criminal action. The trial court sentenced him to twelve years' and three years' imprisonment, respectively, with the sentences to run consecutively.

Linzie appealed to this Court. In his sole point on direct appeal, Linzie contended that the trial court plainly erred in allowing police department employee, K.G., to testify that she was familiar with Linzie because she had seen him "in and around the police station" on several prior occasions. Linzie argued that the testimony was substantially more prejudicial than probative because it permitted the jury to reasonably infer that he had numerous interactions with law enforcement. He argued that the testimony unnecessarily painted his character in a bad light and revealed possible prior bad or criminal acts.

We reviewed the claim for plain error and held that the trial court did not err, *plainly or otherwise*, in admitting the testimony regarding K.G.'s familiarity with Linzie. We concluded that K.G.'s testimony about her familiarity with Linzie did not clearly and directly associate Linzie with any prior bad acts or criminal conduct. We stated that K.G.'s vague references about seeing Linzie around the police station were not clear evidence that Linzie was involved with other bad conduct or crimes, and that K.G. did not testify that Linzie was in the police station

4

because he had been investigated or arrested for other crimes. We further stated that even if the testimony was considered evidence of uncharged misconduct or crimes, which we again reiterated that it was not, that the testimony was still admissible. This was because the testimony was not presented for the purpose of showing propensity, but, rather, to present a complete and coherent picture of law enforcement's investigation and to show the identity of Linzie as the person who committed the charged offenses. We held that the trial court did not err, plainly or otherwise, in admitting the testimony regarding K.G.'s familiarity with Linzie. We affirmed Linzie's convictions and sentence on direct appeal in a *per curiam* order and unpublished memorandum. *State v. Linzie*, 655 S.W.3d 466 (Mo. App. W.D. 2022).

Linzie timely filed his *pro se* Rule 29.15 motion for postconviction relief, and the motion court appointed counsel to represent him. Appointed counsel then timely filed an amended motion. Linzie raised one claim in his amended motion: that trial counsel was ineffective for failing to object to testimony from K.G. that she was familiar with Linzie, having seen him in and around the police station area numerous times.

The motion court held an evidentiary hearing at which Linzie's trial counsel testified. Linzie's counsel testified that while he did not ask K.G. to clarify the context of her previous interactions with Linzie, he believed that the evidence clearly showed why Linzie would have been familiar to people in the area because the police department was "catty-corner" from the Post Office. Trial counsel testified that because Linzie was homeless, he often "wander[ed] around" the area to sleep or "get out of the weather." Trial counsel stated that Linzie's homelessness explained why it was so important for Linzie to go back into the Post Office where he had left all of his belongings and get his things after the first altercation with Victim. Trial counsel stated that, in hindsight, he "probably would have objected" based on relevancy and the

5

implication that Linzie was known to law enforcement.  Trial counsel acknowledged that he did not know if that objection would have been meritorious.

The motion court entered a judgment with findings of fact and conclusions of law denying Linzie's amended motion.  The motion court referenced this Court's holding in Linzie's direct appeal, that K.G.'s testimony was admissible.  The motion court found that Linzie failed to show that trial counsel's performance was deficient or that Linzie was prejudiced by it.  The motion court concluded that because K.G.'s testimony was admissible, counsel could not be ineffective for failing to make a non-meritorious objection.  As to prejudice, the motion court found that Linzie failed to put forth any credible evidence that he was prejudiced by K.G.'s testimony.

Linzie appeals.

## Standard of Review

Our review of the motion court's ruling on a Rule 29.15 motion is limited to whether the motion court's findings and conclusions are clearly erroneous.  Rule 29.15(k); *Hosier v. State*, 593 S.W.3d 75, 81 (Mo. banc 2019); *Watson v. State*, 520 S.W.3d 423, 428 (Mo. banc 2017).  The findings and conclusions are clearly erroneous when, after reviewing the entire record, we are "left with the definite and firm impression that a mistake has been made."  *Watson*, 520 S.W.3d at 428 (citation omitted).  We presume the motion court's findings are correct.  *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009).

## Legal Analysis

To be entitled to postconviction relief based on ineffective assistance of counsel, the movant must satisfy *Strickland*'s two-prong test.  *Meiners v. State*, 540 S.W.3d 832, 836 (Mo. banc 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  The movant must

6

establish that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the movant. *See id.*

To establish that counsel's performance was deficient, the movant must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective. *Zink*, 278 S.W.3d at 176. To overcome this presumption, a movant must identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (citation omitted).

"Besides showing deficient performance, the movant must additionally show that he was prejudiced by the deficiency, meaning that there is 'a reasonable probability that, but for counsel's errors, the outcome would have been different.'" *Christian v. State*, 455 S.W.3d 523, 526 (Mo. App. W.D. 2015) (quoting *Dorsey v. State*, 448 S.W.3d 276, 287 (Mo. banc 2014)). "If a movant fails to establish both deficient performance and resulting prejudice, [the movant] has failed to prove a right to post-conviction relief." *Id.*

Linzie argues that his trial counsel was ineffective for failing to object to K.G.'s testimony about how she was familiar with Linzie. Linzie contends that a reasonable juror could have used the testimony as propensity evidence, and there is a reasonable probability that, but for his trial counsel's failure to object, the outcome of the trial would have been different. The State argues that Linzie is barred from relitigating the issue because the matter was already litigated on direct appeal. We address the State's argument first as it is dispositive.

While *Leisure v. State*, 828 S.W.2d 872, 874 (Mo. banc 1992), held that issues decided on direct appeal could not be relitigated on an ineffective assistance of counsel theory in a postconviction proceeding, *Deck v. State*, 68 S.W.3d 418, 427-28 (Mo. banc 2002), held that in

7

some cases, plain error claims raised on direct appeal may be litigated as claims of ineffective assistance of counsel in postconviction proceedings. *Deck* explained that the "denial of a plain error claim is not dispositive of the question whether counsel was ineffective in failing to preserve the issue as to which plain error was not found." 68 S.W.3d at 428. *Deck* recognized that because the standards of review for plain error and ineffective assistance of counsel differ, there are a "small number of cases in which the application of the two tests will produce different results." *Id.* at 428.

As the Southern District observed in *Shifkowski v. State*:

> [In *Deck*], the Court noted that an unpreserved trial error, reviewed only for plain error, might not meet the "outcome-determinative" standard necessary to grant a new trial. Nevertheless, the same unpreserved error—reviewed in a post-conviction proceeding under the *Strickland* standard for judging ineffective assistance of counsel—would be sufficient "in a small number of cases" to authorize relief because the occurrence of the error undermines the court's confidence in the fairness of the proceeding by creating a reasonable probability the result would have been different.

*Shifkowski v. State,* 136 S.W.3d 588, 590 (Mo. App. S.D. 2004) (internal citations omitted).

To determine whether Linzie's claim of ineffective assistance for failing to object to the challenged testimony is cognizable, we examine how this Court decided Linzie's plain error claim on direct appeal. *See King v. State*, 682 S.W.3d 853, 860 (Mo. App. S.D. 2024).

> An appellate court can decide an unpreserved error on appeal by: (1) declining to exercise its discretionary authority to review the point for plain error; (2) conducting plain error review and concluding that no error occurred; (3) conducting plain error review and concluding that an error occurred, but it was harmless and caused no prejudice to the appellant; (4) conducting plain error review and concluding that a prejudicial error occurred, but it did not rise to the level of manifest injustice or miscarriage of justice and deny relief; or (5) conducting plain error review and concluding that the error rose to the level of manifest injustice or miscarriage of justice and grant relief.

*Cornelious v. State*, 351 S.W.3d 36, 42 (Mo. App. W.D. 2011) (citing *Shifkowski*, 136 S.W.3d at 590-91).  The unpreserved error cited by Linzie on direct appeal falls into the second category and our resolution is guided by *Ringo v. State*, 120 S.W.3d 743 (Mo. banc 2003).

In *Ringo*, the movant filed a postconviction motion where he alleged, *inter alia*, that trial counsel was ineffective for failing to object and request a supplemental jury instruction in the movant's criminal trial.  120 S.W.3d at 746.  The motion court denied the instructional error claim without a hearing, and the Missouri Supreme Court affirmed the motion court's ruling.  *Id.* at 745-46, 749.  The Court noted that in the movant's direct appeal, the instruction issue was raised for plain error and the Court found no error, plain or otherwise.  *Id.* at 746.  The Court held that the movant's defense counsel could not be found ineffective because the trial court did not act erroneously with respect to the instruction issue.  *Id.*  The Court held that, "[t]his point, having already been determined on direct appeal cannot be raised again in a post-conviction relief motion."  *Id.*

Therefore, it is clear that "[w]here a plain error point is reviewed on direct appeal and the appellate court concludes that no error occurred, the issue cannot be relitigated in a post-conviction proceeding."  *Cornelious*, 351 S.W.3d at 43 (citing *Ringo*, 120 S.W.3d at 746).  In this case, we reviewed Linzie's direct appeal claim regarding the admission of the challenged testimony, and found no error, plain or otherwise.  Linzie's defense counsel could not be ineffective for failing to object to K.G.'s testimony because it was admissible.  Linzie cannot use his post-conviction proceeding as a "vehicle to obtain a second appellate review of matters raised previously on direct appeal."  *Henningfeld v. State*, 451 S.W.3d 343, 348-49 (Mo. App. E.D. 2014).

Because this Court reviewed Linzie's plain error point on direct appeal and this Court found that no error—plain or otherwise—occurred, Linzie is barred from relitigating the same issue in a postconviction proceeding. *See Ringo*, 120 S.W.3d at 746; *Jones v. State*, 514 S.W.3d 72, 83 (Mo. App. E.D. 2017); *Cornelious*, 351 S.W.3d at 43.

**Conclusion**

The motion court's judgment is affirmed.

_____
Janet Sutton, Judge

Mark D. Pfeiffer, P.J., and Cynthia L. Martin, J. concur.