**Otis CORNELIOUS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 72866.**

Missouri Court of Appeals,
Western District.

Sept. 27, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 2011.

---

**2.** Another way of saying this is that, when the public interest is impacted, the issue is live.

James R. Hobbs, J. Justin Johnston, Kansas City, MO, for Appellant.

Chris Koster, Attorney General, Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division IV: LISA WHITE HARDWICK, Chief Judge, Presiding, MARK D. PFEIFFER, Judge, and ROBERT M. SCHIEBER, Special Judge.

MARK D. PFEIFFER, Judge.

Otis Cornelious ("Cornelious") was convicted of murder in the first degree and armed criminal action and was sentenced to life imprisonment without the possibility of probation or parole for the murder charge and twenty-seven years imprisonment for the armed criminal action charge, sentences to run concurrently. His convictions and sentences for these crimes were affirmed on direct appeal. *State v. Cornelious*, 258 S.W.3d 461 (Mo.App. W.D.2008). He now appeals from the judgment of the Circuit Court of Jackson County, Missouri, denying his timely filed Rule 29.15 motion for post-conviction relief based on ineffective assistance of counsel. We affirm.

### Facts and Procedural History[1]

■ One of the issues Cornelious raised in his direct appeal was that his Fifth Amendment rights as outlined in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), were violated when the prosecutor impermissibly commented on his post-arrest silence. *Cornelious*, 258 S.W.3d at 464. Of the four errors alleged, only one of the alleged errors was objected to and, thus, preserved for appellate review under the standard outlined in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[2] *Id.* at 465. On direct appeal, this Court found that the preserved error, where the defense objected to the prosecutor's comments about Cornelious's failure to call the police and inform them that the shooting was in self-defense, was not an impermissible com-

ment on Cornelious's silence in violation of *Doyle*. *Id.* at 467. The other alleged errors were unpreserved and were reviewed only for plain error. *Id.* at 465. We found that two of the unpreserved alleged errors, concerning the prosecutor's comments on Cornelious's silence at the time he was fleeing, were not impermissible violations of *Doyle* but were legitimate methods of impeaching his credibility. *Id.* at 466. The final unpreserved alleged error, concerning the prosecutor's statement that Cornelious had two years to think about his story, was found to be a comment on Cornelious's post-arrest, post-*Miranda* silence; but we concluded that the comment did not result in a manifest injustice or a miscarriage of justice. *Id.* at 466–67.

Cornelious, with the assistance of private counsel, filed a timely Rule 29.15 Motion to Vacate, Set Aside or Correct Judgment and Sentence ("Rule 29.15 Motion") on November 17, 2008. Cornelious raised two claims of ineffective assistance of counsel in his post-conviction relief motion: first, that counsel was ineffective "when he neglected to make a timely objection to the State's repeated comments regarding [Cornelious's] post-arrest silence"; and second, "when he neglected to investigate or seek discovery regarding critical fingerprint evidence, despite [Cornelious's] requests to do so." Cornelious filed an amended Rule 29.15 Motion on March 24, 2010, which was further amended by handwritten interlineation on April 15, 2010.

On April 15, 2010, the Circuit Court of Jackson County, Missouri ("motion court"),

---

1. The underlying facts of this case are set out in Cornelious's direct appeal to this Court and will not be repeated here; suffice it to say, the evidence was sufficient to convict Cornelious of murder in the first degree and armed criminal action for the shooting death of Antonio Leggs on October 21, 2003. *State v. Cornelious*, 258 S.W.3d 461, 463–64 (Mo.App. W.D. 2008).

2. "[B]efore federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

held a hearing on Cornelious's Rule 29.15 Motion. On July 27, 2010, the motion court entered its judgment denying Cornelious's Rule 29.15 Motion. Cornelious appeals.

## Standard of Review

 Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *Sidebottom v. State*, 781 S.W.2d 791, 794–95 (Mo. banc 1989). "Findings and conclusions are deemed clearly erroneous only if a full review of the record leaves the appellate court with the definite and firm impression that a mistake has been made." *Sidebottom*, 781 S.W.2d at 795. The motion court's ruling is presumed correct. *Strong v. State*, 263 S.W.3d 636, 642 (Mo. banc 2008).

To be entitled to post-conviction relief for ineffective assistance of counsel, Cornelious must satisfy the two-prong *Strickland* test: (1) that counsel's performance was deficient, in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that counsel's deficient performance prejudiced Cornelious's defense. *Strickland v. Washington*, 466 U.S. 668, 686, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). In reviewing the performance prong, Cornelious must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment. *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052. To prove prejudice, Cornelious must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. Both of these prongs must be estab-lished by a preponderance of the evidence in order to prove ineffective assistance of counsel. *Strong*, 263 S.W.3d at 642. If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and Cornelious's claim of ineffective assistance of counsel must fail. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

## Analysis

### Point I: Ineffective Assistance— Failure to Object

Cornelious raises two points on appeal. First, he claims that the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief, alleging ineffective assistance of trial counsel, because he claims the motion court incorrectly applied the "law of the case" doctrine. Specifically, Cornelious asserts that the motion court erred when it used our decision on direct appeal—that the prosecutor's comments during Cornelious's cross-examination and during closing argument did not rise to the level of plain error—as determinative of the separate post-conviction issue of whether trial counsel's failure to object to such comments constituted ineffective assistance of counsel.

 As to this first point, we note that "the standards of review of preserved and unpreserved error on direct appeal are different from each other, and ... both are in turn different from the standard for review of a post-conviction motion." *Deck*, 68 S.W.3d at 427. Appellate review for preserved error is for prejudicial error, and the court will reverse only if the error deprived the defendant of a fair trial. *Id.* Pursuant to Rule 30.20, appellate courts have the discretion to review unpreserved error for plain error if manifest injustice would otherwise result. *Id.* at 427–28. Both of these standards of review presuppose that the trial was a fair pro-

ceeding. *Id.* at 428. In contrast, in a post-conviction motion alleging ineffective assistance of counsel, the defendant is asserting that an error occurred that undermines the appellate court's confidence in the fairness of the proceeding. *Id.* The inquiries before the appellate court on direct appeal and on post-conviction review are different, and "denial of a plain error claim is not dispositive of the question whether counsel was ineffective in failing to preserve the issue as to which plain error was not found." *Id.*

In Cornelious's direct appeal, Cornelious claimed that his Fifth Amendment rights as outlined in *Doyle* were violated when the prosecutor impermissibly commented on his post-arrest silence. *Cornelious*, 258 S.W.3d at 464. In the direct appeal, we reviewed the prosecutor's three references that were not objected to for plain error. *Id.* at 465–66. We held the prosecutor's questions to Cornelious during cross-examination about his fleeing from the FBI, and the prosecutor's argument during closing argument that a reasonable person would not have fled but would have contacted the police and explained that he acted in self-defense were not *Doyle* violations but were legitimate methods of impeaching his credibility, and there was no plain error in the trial court's failure to declare a mistrial. *Id.* at 466–67. As to the prosecutor's statement during closing argument that Cornelious had two years to think about his story, we assumed that Cornelious had been given his *Miranda* warnings and had asserted his Fifth Amendment rights so that the prosecutor's statement did comment on Cornelious's post-arrest, post-*Miranda* silence "at least somewhat." *Id.* at 466. In the direct appeal, we next considered whether this comment "resulted in a manifest injustice or a miscarriage of justice." *Id.* We noted that "[a] court should rarely grant relief on an assertion of plain error as to matters contained within clos-

ing argument" and held that the trial court had no duty to intervene *sua sponte* to declare a mistrial. *Id.* at 467. Thus, on direct appeal, we found no plain error in the prosecutor's comments during closing argument.

In reviewing the motion court's decision on Cornelious's Rule 29.15 motion, we do not determine the propriety of the prosecutor's complained-of questions to Cornelious during cross-examination nor the prosecutor's comments in closing argument. Instead, we must determine whether Cornelious's trial counsel's failure to timely and properly object to these questions and arguments constitutes ineffective assistance of counsel, thereby prejudicing Cornelious.

An appellate court can decide an unpreserved error on appeal by: (1) declining to exercise its discretionary authority to review the point for plain error; (2) conducting plain error review and concluding that no error occurred; (3) conducting plain error review and concluding that an error occurred, but it was harmless and caused no prejudice to the appellant; (4) conducting plain error review and concluding that a prejudicial error occurred, but it did not rise to the level of manifest injustice or miscarriage of justice and deny relief; or (5) conducting plain error review and concluding that the error rose to the level of manifest injustice or miscarriage of justice and grant relief. *Shifkowski v. State*, 136 S.W.3d 588, 590–91 (Mo.App. S.D.2004). The unpreserved errors cited by Cornelious fall into two of these categories.

Our ruling on the plain error points in Cornelious's direct appeal as to the prosecutor's questions to Cornelious during cross-examination about his flight and to the prosecutor's references in closing argument to Cornelious's flight fall into

the second category; we conducted plain error review and concluded that no *Doyle* violation occurred. *Cornelious*, 258 S.W.3d at 466. Because there was no *Doyle* violation, there was no basis for counsel to assert an objection to the questions or the closing argument references. "[T]rial counsel is not ineffective for failing to make non-meritorious objections." *Zink v. State*, 278 S.W.3d 170, 188 (Mo. banc 2009) (internal quotation omitted). Where a plain error point is reviewed on direct appeal and the appellate court concludes that no error occurred, the issue cannot be relitigated in a post-conviction proceeding. *Ringo v. State*, 120 S.W.3d 743, 746 (Mo. banc 2003) (holding counsel cannot be ineffective based on errors that the appellate court determined on direct appeal were not errors, plain or otherwise); *Shifkowski*, 136 S.W.3d at 591.

 The motion court described its application of the preceding rule of law as "law of the case." Cornelious argues that the motion court incorrectly applied the "law of the case" doctrine in resolving Cornelious's ineffective assistance of counsel claim. "The 'law of the case' doctrine provides that a previous holding on an issue by an appellate court becomes the 'law of the case' and that issue may not be relitigated on remand or in a subsequent appeal." *Laws v. State*, 183 S.W.3d 629, 633 (Mo.App. S.D.2006). The doctrine prevents successive appeals that are not otherwise authorized. *Id.* "For this doctrine to apply, the issue sought to be relitigated must be the same issue as previously decided." *Id.* Although the motion court incorrectly denominated its application of the *Ringo* holding as an application of the "law of the case" doctrine, the motion court did not err in relying on this Court's determination on direct appeal that the prosecutor's questions to Cornelious during cross-examination about his flight and

the prosecutor's references in closing argument to Cornelious's flight did not violate *Doyle* to conclude that defense counsel was not ineffective for failing to object.

 Our ruling on the plain error point in Cornelious's direct appeal as to the prosecutor's statement during closing argument that Cornelious had two years to think about his story falls into the fourth *Shifkowski* category; we conducted plain error review and concluded that the prosecutor's statement *did* comment on Cornelious's post-arrest, post-*Miranda* silence, "at least somewhat," in violation of *Doyle:* but we determined that this comment did not result in a manifest injustice or a miscarriage of justice, found no plain error, and denied relief. *Cornelious*, 258 S.W.3d at 466–67. In this category of cases, "denial of a plain error claim is not dispositive of the question whether counsel was ineffective in failing to preserve the issue as to which plain error was not found." *Deck*, 68 S.W.3d at 428. Thus, we review whether Cornelious's claim of error brings this case within the small number of cases in which plain error did not exist but *Strickland* prejudice is present because " 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Id.* at 429 (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

To meet the standard for granting post-conviction relief based on an allegation of ineffective assistance of counsel, Cornelious must show by a preponderance of the evidence: "(1) that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) that counsel's deficient performance prejudiced the defense." *Id.* at 425 (citing *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052).

To meet the first prong of *Strickland,* Cornelious was required to show by a preponderance of the evidence that his trial counsel was ineffective for failing to object to the prosecutor's statement during closing argument that Cornelious had two years to think about his story. Cornelious bears a heavy burden overcoming the strong presumption that counsel provided competent assistance. *Id.*

▮▮▮▮ "Ineffective assistance of counsel is rarely found in cases where trial counsel has failed to object." *Bradley v. State,* 292 S.W.3d 561, 564 (Mo.App. E.D. 2009) (citing *Williams v. State,* 205 S.W.3d 300, 305 (Mo.App. W.D.2006)). "The movant must prove that a failure to object was not strategic and that the failure to object was prejudicial." *Goudeau v. State,* 152 S.W.3d 411, 418 (Mo.App. S.D.2005) (internal quotation omitted). "If trial counsel's failure to object is based on reasonable trial strategy, the movant cannot demonstrate counsel was ineffective." *Bradley,* 292 S.W.3d at 564–65. "The failure to object to closing argument constitutes ineffective assistance only when the comment was of such a character it resulted in a substantial deprivation of defendant's right to a fair trial." *Olds v. State,* 891 S.W.2d 486, 491 (Mo.App. E.D.1994).

▮▮▮▮ The portion of the prosecutor's closing argument that we found suspect on direct appeal was:

> And remember [the two eyewitnesses'] statements were taken hours, mere hours after they had just witnessed the man that they both love, be gunned down right before their eyes. Their statements were taken immediately after that homicide. *And who's had al-*

*most two years to think about what his story is going to be to the 12 of you? Cornelious,* 258 S.W.3d at 465. Cornelious contends that his trial counsel's [3] failure to object was not a matter of trial strategy. In testimony by deposition at Cornelious's Rule 29.15 hearing, when Cornelious's trial counsel was asked why he failed to object to the prosecutor's reference during closing argument to Cornelious's right to be free from self-incrimination, said trial counsel responded that he thought he had a "continuing objection" to such references but that relying on a continuing objection to preserve errors was not a good practice and that "you should continually make your objections." Trial counsel was then asked whether he had a strategic reason for declining to object on that occasion; he admitted that he did not. He stated, "I got wore down, I suppose.... I missed it." Trial counsel's testimony does not indicate that he had a strategic reason for failing to make a contemporaneous objection. Further, we do not discern an obvious strategic reason from the record before us. Thus, we must consider whether his failure to object resulted in prejudice.

▮▮▮▮ Cornelious argues that his counsel's failure to object precluded this Court on direct appeal from applying the more favorable *Chapman v. California* standard of review.[4] The motion court concluded that Cornelious's argument was negated by the clear language of this Court's ruling on the direct appeal, reflecting that the same factors were considered in ruling on issues preserved by objection and issues reviewed under the plain error standard. On appeal, Cornelious speculates that had the Court employed the *Chapman* standard, Cornelious would have been granted

---

**3.** At Cornelious's trial, he was represented by attorney Daniel Ross. Cornelious retained alternative counsel for his Rule 29.15 Motion and the present appeal.

**4.** *See* footnote 2.

the relief he requested. He suggests that the prosecutor's comment that Cornelious had "almost two years to think about what his story is going to be" was a *Doyle* violation similar to that identified in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).[5]

In reviewing the context of Cornelious's entire trial, we do not believe it reasonably probable that the outcome would have been different had the State's comment not been made. We do not believe that the prosecutor's comment during closing argument, comprising three lines in a transcript of over 850 pages, deprived Cornelious of a fair trial, particularly when it "was isolated and brief, and was not emphasized by the prosecutor." *State v. Rousan,* 961 S.W.2d 831, 851 (Mo. banc 1998). During his direct examination testimony, Cornelious admitted to possessing a weapon and to shooting the victim. Cornelious's presence at the crime scene and his flight therefrom are evidence of consciousness of guilt. *State v. Clay,* 975 S.W.2d 121, 140 (Mo. banc 1998). As we recognized on direct appeal:

> [A]ny unfairness was minor in view of the fact that [Cornelious], rather than

claim justified self-defense, chose to run from the area and hide. The State was permitted to argue the evidence of flight. The notion that the defendant had "two years to think about his story" was linked to the defendant's flight from the state.

*Cornelious,* 258 S.W.3d at 467. We do not discern any prejudice from counsel's failure to object to the prosecutor's comment during closing argument, and we cannot say that the verdict would have been different. *See Zink v. State,* 278 S.W.3d 170, 187 (Mo. banc 2009).

Point I is denied.

### Point II: Ineffective Assistance— Failure to Investigate

In his second point, Cornelious claims that the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief, alleging ineffective assistance of trial counsel, because it concluded that trial counsel's failure to investigate certain fingerprint evidence did not prejudice Cornelious. Cornelious claims that such evidence would have corroborated his testi-

**5.** Brecht sought habeas corpus relief following his murder conviction. *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The first time Brecht claimed that the shooting was an accident was when he took the stand at trial. *Id.* at 628, 113 S.Ct. 1710. The U.S. Supreme Court decided whether the *Chapman* harmless-beyond-a-reasonable-doubt standard applied in determining whether the prosecution's use for impeachment purposes of petitioner's post-*Miranda* silence, in violation of due process under *Doyle,* entitled Brecht to habeas corpus relief. *Id.* at 622–23, 113 S.Ct. 1710. The Court held that it did not; instead, in determining whether habeas relief must be granted, the Court adopted the standard in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946): whether the *Doyle* trial error "had substantial and

injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623, 113 S.Ct. 1710.

The Court concluded that Brecht was not entitled to habeas relief because the *Doyle* error that occurred at his trial did not substantially influence the jury's verdict. *Id.* at 639, 113 S.Ct. 1710. The Court determined that the State's references to Brecht's post-*Miranda* silence were infrequent, comprising less than two pages of the 900–page trial transcript in the case. *Id.* Also, in view of the State's many permissible references to Brecht's pre-*Miranda* silence (immediately after the shooting, he failed to mention anything about the shooting being accidental to the officers), the Court found references to petitioner's post-*Miranda* silence were merely cumulative. *Id.* Moreover, the Court noted the State introduced weighty evidence of Brecht's guilt. *Id.*

mony and been useful to impeach state witnesses.

 Trial counsel is afforded wide latitude in preparing for and conducting a defense. *State v. Neal,* 849 S.W.2d 250, 258 (Mo.App. W.D.1993). To succeed on a claim of ineffective assistance of counsel based on the failure to investigate, Cornelious was required to: (i) "specifically describe the information his attorney failed to discover," (ii) "establish that a reasonable investigation by trial counsel would have resulted in the discovery of such information[,]" and (iii) "prove that the information would have aided or improved his position at trial." *State v. Stewart,* 850 S.W.2d 916, 921 (Mo.App. W.D.1993). Cornelious alleges that his counsel was ineffective in failing to investigate two sources of fingerprint information that would have impacted his defense.

### Fingerprint Evidence Supporting Self–Defense

 First, Cornelious claims he informed his trial counsel that he wanted to pursue a theory of self-defense, predicated on the fact that the victim wielded a knife at Cornelious during their confrontation in October 2003. Cornelious's trial counsel strategized that to support this theory, it would be important to show that the victim brandished a knife at Cornelious, supported by evidence that any fingerprints on the knife belonged to the victim. In response to defense discovery requests, the State produced a Kansas City Crime Lab report. It disclosed that latent prints had been lifted from a kitchen knife at the scene of the victim's death but stated that they were of no value for identification. Cornelious's trial counsel did not do anything prior to trial to dispute this conclusion.

At trial, during the State's case-in-chief, Cornelious's trial counsel attempted to cross-examine the lead homicide investigator on the case about the results of blood and fingerprint tests performed on the knife. The State objected to this line of questioning. The trial court overruled the State's objection to the detective's testimony as to what tests were done but sustained the State's objection to the detective testifying as to the results of the tests since he did not author the report. Although Cornelious's trial counsel indicated in a discussion outside the presence of the jury that he would call the State's fingerprint examiners, whom the prosecutor agreed to produce, during Cornelious's case-in-chief, Cornelious's trial counsel did not call the fingerprint examiners to testify.

At the post-conviction evidentiary hearing, Cornelious's retained fingerprint expert testified that, in his opinion, the fingerprint lift taken from the knife was an identifiable print; *however, he was unable to match it to the prints of the victim.*[6]

**6.** According to the motion court's findings of fact, the reason Cornelious's retained fingerprint expert could not make a comparison between the identifiable latent fingerprint lift from the knife and the source prints of the victim collected by the Kansas City Crime Lab technicians on the day of the victim's death was because the latent print was from an area of the hand between the first joint and the palm that wasn't captured by the Lab technicians when they took the source prints from the victim. Cornelious makes a provocative argument that the faulty collection of the vic-

tim's prints by the Lab inhibited any expert, including defense experts, from matching the fingerprint to the victim and the State, not the defendant, should be punished for its alleged faulty collection of the print. But, Cornelious ignores the fact that finding the victim's fingerprints on a knife from the crime scene would *not* have been inconsistent with the testimony of the crime scene eyewitnesses who confirmed that the victim grabbed a knife *after* the initial altercation with Cornelious and *before* Cornelious left the house and

The motion court thus concluded that this testimony would not have provided Cornelious with a viable defense.

The motion court's judgment points out that at trial the State called all of the witnesses who were present in the home when the shooting took place. The witnesses testified that, on the night of the homicide, Cornelious and the victim had a fistfight, after which *the victim* went into the kitchen and *picked up a knife.*[7] Cornelious left the house and returned with a gun, shooting the victim. The witnesses either stated that the victim was not holding a knife when he was shot or that they could not say one way or the other whether the victim was holding a knife when he was shot. Irrespective, none of the witnesses saw the victim make any threatening movements toward Cornelious when Cornelious shot the victim.

The detective who investigated the case testified that a knife was collected and examined by Lab experts, who found no prints of value on the knife. As the motion court noted, having an expert testify that he found a fingerprint, which he could not match to anyone, on a knife found in the house simply would not establish Cornelious's self-defense claim that the victim was holding a knife and wielding it in a threatening manner at the time Cornelious shot the victim.

The simple fact is that one would *expect* the victim's fingerprints to show up on the knife because eyewitnesses testified that, after the initial altercation with Cornelious, the victim went to the kitchen and *picked up a knife.* So, finding the victim's fingerprints on a knife would not have been inconsistent with the eyewitness testimony that the victim picked up a knife. Likewise, finding the victim's fingerprints on a knife would not have been inconsistent with the eyewitness testimony that either the victim was not holding a knife at the time Cornelious shot him or, alternatively, if he was holding a knife, he was not doing so in a manner as to make any threatening movements toward Cornelious when Cornelious shot him. Accordingly, there is nothing about this alleged fingerprint evidence that Cornelious claims his trial counsel should have investigated and discovered that would have "aided or improved his position at trial."

### The American Society of Crime Laboratory Directors (ASCLD) Inspection Report

■ Second, about a month before Cornelious's trial in 2005, a 200–page 2003 ASCLD inspection report that was critical of the Kansas City Crime Lab was produced to Cornelious's trial counsel during discovery in another criminal case in which Cornelious's trial counsel was representing another defendant. The ASCLD report noted various Lab deficiencies, including the Lab's procedure regarding fingerprint collection, preservation, and analysis. This audit was conducted during a recertification process, indicating that the Lab was not accredited at the time the evidence in Cornelious's case was collected and analyzed. Cornelious's trial counsel

---

later returned with a gun to shoot the victim. And, none of the eyewitnesses saw the victim make any threatening movement toward Cornelious upon Cornelious's return to the house and Cornelious's subsequent shooting of the victim.

**7.** In other words, there was no dispute at trial that the victim picked up a knife after an initial altercation with Cornelious—which begs the question: What additional value is there to being able to prove that the victim's fingerprints were on a knife when all the witnesses agree that the victim's fingerprints should, in fact, be on a knife from the crime scene?

did not use the report to impeach the Lab conclusions at trial.

The motion court found no reasonable indication that the use of the Lab's lack of accreditation at the time the evidence was collected and analyzed to cross-examine would have resulted in a different outcome. We agree. Even though Cornelious's fingerprint expert testified that the lift taken from the knife was an identifiable print, *he was unable to match it to the victim;* and even were the print matched to the victim, it would not have contradicted the eyewitness testimony. Any such evidence would not have aided Cornelious in his claim at trial that he acted in self-defense, particularly considering the other credible testimony from three eyewitnesses. Although the eyewitnesses could not agree whether the victim *still* had a knife in his hand when Cornelious returned to the house with a gun, they agreed that the victim had previously picked up a knife in the kitchen (i.e., the victim's fingerprints would be expected to be on the knife) after the victim's initial altercation with Cornelious. However, none of the eyewitnesses saw the victim make any threatening movements toward Cornelious when Cornelious shot the victim, whether he *still* had the knife in his hands or not. *Cornelious,* 258 S.W.3d at 464. Accordingly, we agree with the motion court that there is no reasonable indication that, had trial counsel used the ASCLD report at the time of Cornelious's trial, it would have resulted in a different outcome.

 Thus, we conclude that the findings and conclusions of the motion court, that Cornelious's trial counsel was not ineffective for failing to call a fingerprint expert or for failing to use the ASCLD audit to cross-examine, were not clearly erroneous.[8] After a full review of

---

8. We address *ex gratia* the procedural issue raised by the parties. For the first time on appeal, the State asserts that the motion court was without authority to consider Cornelious's argument relating to the failure to use information in the ASCLD audit of the KC Crime Lab regarding the fingerprint analysis because that allegation was first included in an amended motion filed out of time. Cornelious's motion counsel filed the original motion on November 17, 2008; Cornelious's motion counsel filed the amended motion on March 24, 2010, with further interlineations made on the date of hearing, April 15, 2010. Cornelious argues that the State waived its timeliness objection because it did not object on such basis to the motion court.

If a hearing is held on a Rule 29.15 motion, it is "confined to the claims contained in the last timely filed motion." Rule 29.15(i). Any amended motion must be filed within sixty days of specified events. Rule 29.15(g). The court may extend the time for filing an amended motion for one additional thirty-day period. *Id.* Clearly, Cornelious's amended motion was filed out of time. However, the State did not raise a timeliness objection to the motion court. "The question of 'timeliness' raises issues of trial error and not juris-

diction." *Gerlt v. State,* 339 S.W.3d 578, 581 (Mo.App. W.D.2011). We are cognizant that the Eastern District of this court has held that, despite the fact that the time limitations are not jurisdictional, the failure to comply with a time limit may be raised for the first time on appeal. *Swofford v. State,* 323 S.W.3d 60, 63–64 (Mo.App. E.D.2010) (vacating a judgment denying a Rule 29.15 motion for post-conviction relief and remanding the cause with directions to dismiss the motion because the movant failed to timely file a pro se motion as required by Rule 29.15). However, we adhere to the Missouri Supreme Court's prior holding that if a matter is procedural and required by rule, then it generally may be waived if not timely raised. *McCracken v. Wal–Mart Stores E., LP,* 298 S.W.3d 473, 476 (Mo. banc 2009). The rules of court, then, may be waived. *Snyder v. State,* 334 S.W.3d 735, 739 (Mo.App. W.D.2011). We find that the State waived its right to challenge Cornelious's post-conviction motion based upon the time limitation contained in Rule 29.15(g) by failing to raise that issue to the motion court. *Snyder,* 334 S.W.3d at 739–40 (holding that the State waived its right to challenge appellant's post-conviction motion based upon the time limitation con-

the record, we are not left with a definite and firm impression that a mistake was made.

Point II is denied.

### Conclusion

The motion court did not clearly err in overruling Cornelious's Rule 29.15 Motion for post-conviction relief. The judgment is affirmed.

LISA WHITE HARDWICK, Chief Judge, and ROBERT M. SCHIEBER, Special Judge, concur.

tained in Rule 24.035(b) by failing to raise that issue in the motion court).