Terry A. BLAIR, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 74698.

Missouri Court of Appeals,
Western District.

June 25, 2013.

---

Susan L. Hogan, Kansas City, MO, for appellant.

Evan J. Buchheim, Jefferson City, MO, for respondent.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Terry A. Blair appeals from a judgment entered by the Circuit Court of Jackson County denying his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. For the following reasons, the judgment is affirmed.

In 2004, an unidentified male made two anonymous 911 calls informing the dispatcher of the location of several women's bodies along the Prospect corridor in Kansas City, Missouri. The caller also admitted to killing several other women whose bodies had already been discovered by the police. The caller said the victims were prostitutes and that he had killed them because they were "scum" and a "disgrace."

On September 6, 2004, a witness came forward and informed the police that Appellant had told her that he was going to kill all prostitutes because they were the scum of the earth. Appellant's picture was then shown on the news as a person of interest in the string of murders committed along the Prospect corridor, and police eventually arrested Appellant hiding in his friend's garage. Appellant's DNA was later discovered on the body of one of the victims, and he was deemed to be a possible contributor to DNA specimens found on another one of the victims. Police also triangulated the anonymous 911 phone calls, which both originated near the vicinity where Appellant had been staying. Ultimately, Appellant was charged with six counts of murder in the first degree, § 565.020.[1]

Prior to trial, Appellant's trial counsel Cynthia Dryden ("Trial Counsel Dryden") and David Kenyon ("Trial Counsel Kenyon") entered into a stipulation with the State that Dr. Thomas Young could testify regarding the autopsies performed by Dr. Thomas Gill. An autopsy was performed on each of the six victims. The cause of death for five of the six victims was undetermined, but the deaths were ruled homicides because the bodies had been concealed.[2] Dr. Young performed autopsies

---

1. Appellant was originally charged with eight counts of first-degree murder, § 565.020, one count of assault in the first degree, § 565.050, and three counts of forcible rape, § 566.030. Prior to trial, however, six of the twelve counts were dismissed, and Appellant was tried only as to six counts of first-degree murder.

2. Dr. Young opined that one of the six victims, Anna Ewing, died from an accidental drug overdose because there was no evidence

on three of the six victims while Dr. Gill performed autopsies on the other three victims. The stipulation was made with the understanding that if Dr. Young reached a different conclusion than Dr. Gill, such conclusions would be disclosed prior to his testimony.

Additionally, Appellant's trial counsel sought to suppress statements Appellant made to the police on the basis of *Miranda* violations as well as any testimony regarding any out-of-court or in-court identification of Appellant. In particular, the defense sought to prevent Ruby Irene Williams, mother of victim Darci Williams ("Darci"), from testifying and identifying Appellant as the last person she saw Darci with prior to Darci's disappearance. Appellant did not testify at the suppression hearing held regarding these issues. Following the hearing, the trial court overruled Appellant's motion to suppress his statements to police but took the identification issue under advisement. Ultimately, the trial court denied Appellant's attempts to suppress Ruby Williams's testimony identifying Appellant with Darci prior to her disappearance.

In 2008, a bench trial was held as to the six counts of first-degree murder. The trial court found Appellant guilty on all counts and sentenced him to six consecutive life sentences. We affirmed his conviction and sentence on direct appeal. *State v. Blair*, 298 S.W.3d 38, 52 (Mo.App. W.D.2009).

In March 2010, Appellant filed his *pro se* Rule 29.15 motion for post-conviction relief. His post-conviction relief counsel subsequently filed an amended Rule 29.15 motion that alleged seven grounds for relief and incorporated Appellant's *pro se* claims. The following three grounds for relief are pertinent to this appeal: trial counsel was ineffective in that (1) counsel agreed to allow Dr. Young to testify regarding the three autopsies Dr. Gill performed instead of calling Dr. Gill as a witness; (2) counsel failed to object when Ruby Williams testified at trial and identified Appellant as the individual she last saw Darci alive with; and (3) counsel failed to call Appellant as a witness during the suppression hearing.

On February 10, 2011, the motion court conducted an evidentiary hearing at which Trial Counsel Kenyon, Trial Counsel Dryden, and Appellant testified. Trial Counsel Kenyon testified that he could have required the State to call Dr. Gill to testify regarding the three autopsies he performed, but there was no tactical advantage in doing so because Dr. Young reached the same conclusions as Dr. Gill— mainly that the cause of death of those three victims was undetermined. He further explained that he considered calling Appellant to testify at the suppression hearing but ultimately advised Appellant not to testify. He explained, however, that even though Appellant followed his and Trial Counsel Dryden's advice not to testify, Appellant knew it was his decision whether to testify at the hearing.

Trial Counsel Dryden testified that she could have made a hearsay objection to Dr. Young testifying about the autopsies performed by Dr. Gill. She explained, however, that the cause of death was not at issue in the case and that it was actually beneficial for the defense that the medical examiners agreed that the cause of death of five of the victims could not be determined. She further testified that Appellant made the ultimate decision as to whether to tes-

that her body had been concealed. The trial court, however, disagreed and found Ewing's body was concealed because it was "posi-

tioned on the ground next to the back stoop of an abandoned house, with a yard full of heavy weed growth."

tify at the suppression hearing. Trial Counsel Dryden also explained that she filed an oral motion to suppress Ruby Williams's identification of Appellant but that she did not believe she objected to Ruby William's in-court identification of Appellant.

Appellant testified that he wanted to testify at the suppression hearing but he did not do so at the advice of his trial counsel. He further explained that had he testified at the suppression hearing he would have informed the trial court that the only reason he agreed to speak with police was because he believed he was being questioned about an assault charge. He also testified that once the police began questioning him about the murders, he requested an attorney multiple times before the interrogation ended.

On November 22, 2011, the motion court entered its judgment denying Appellant's motion for post-conviction relief. In doing so, the motion court found that Appellant failed to state what alleged prejudice resulted from his trial counsel entering into an agreement that permitted Dr. Young to testify about the autopsies Dr. Gill performed on three of the victims. The motion court further concluded that Dr. Young's testimony regarding Dr. Gill's autopsies was admissible and that trial counsel's decision to have Dr. Young testify as opposed to Dr. Gill was a matter of trial strategy. The motion court also concluded that Appellant failed to present any evidence that trial counsel's failure to object to Ruby William's identification of Appellant at trial "was anything short of sound trial strategy" and, likewise, failed to identify how he was prejudiced by trial counsel not objecting to such evidence. Additionally, the motion court opined that Appellant's trial counsel was not ineffective for failing to call him as a witness at the suppression hearing because the evidence established that Appellant knew it was his decision whether to testify and he chose to follow his trial counsel's advice not to testify.

■ Appellant now appeals from the denial of his Rule 29.15 motion for post-conviction relief. "Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous." *Cornelious v. State*, 351 S.W.3d 36, 41 (Mo.App. W.D.2011) (citing Rule 29.15(k)). "Findings and conclusions are deemed clearly erroneous only if a full review of the record leaves the appellate court with the definite and firm impression that a mistake has been made." *Id.* at 40 (internal quotation omitted).

■ In each of his three points on appeal, Appellant raises claims of ineffective assistance of trial counsel. "To prevail on an ineffective assistance of counsel claim, Appellant must show that (1) trial counsel's performance was deficient in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and (2) the deficient performance prejudiced Appellant." *Bode v. State*, 316 S.W.3d 406, 408 (Mo.App. W.D.2010) (internal quotation omitted). "Appellant must establish both the performance and prejudice prongs of this test in order to prevail on a claim of ineffective assistance, and if he fails to satisfy either prong, we need not consider the other." *Cone v. State*, 316 S.W.3d 412, 415 (Mo.App. W.D. 2010).

■ "To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Bode*, 316 S.W.3d at 408 (internal quotation omitted). "We presume counsel to be competent, requiring proof to the contrary by a preponderance

of the evidence." *Cone*, 316 S.W.3d at 414 (internal quotation omitted). "As to prejudice, a claimant must demonstrate prejudice by showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 415 (internal quotation omitted).

■ In his first point, Appellant contends his trial counsel was ineffective because they agreed to permit Dr. Young to testify regarding the three autopsies performed by Dr. Gill. Appellant asserts that, by entering into the agreement, Appellant was denied his right to cross-examine and confront each of the State's witnesses because Dr. Gill never testified.

The motion court concluded that trial counsel was not ineffective for entering into the agreement with the State to permit Dr. Young to testify regarding the three autopsies performed by Dr. Gill because such testimony did not violate Appellant's right to confront the witnesses against him. The motion court further concluded that Appellant failed to establish that Dr. Young testifying instead of Dr. Gill prejudiced him. We agree.

■ On several occasions, this Court has addressed the issue of whether, in light of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), "a medical examiner other than the one who performed an autopsy may testify to the results of the autopsy" and "whether an autopsy report prepared by an absent medical examiner may itself be admitted into evidence." *State v. Dudley*, 303 S.W.3d 203, 208 (Mo.App. W.D.2010); *see also State v. Fulton*, 353 S.W.3d 451, 455–57 (Mo.App. W.D.2011); *State v. Walkup*, 290 S.W.3d 764, 766–67 (Mo.App. W.D. 2009). These cases indicate that a medical examiner "may properly testify to his or her own opinions and conclusions, even if relying on the absent examiner's report, without violating the Confrontation Clause, so long as the testifying examiner does not discuss the absent examiner's opinions or conclusions, and the absent examiner's report is not admitted into evidence." *Fulton*, 353 S.W.3d at 455 (emphasis omitted). Thus, it follows that if a medical examiner can testify about his or her own conclusions based upon an absent medical examiner's report without violating the Confrontation Clause, then the mere act of trial counsel stipulating with the State that a medical examiner can testify in lieu of an absent medical examiner likewise does not violate the defendant's right to confront the witnesses against him.

We recognize that such testimony is permissible on the basis that "the testifying examiner does not discuss the absent examiner's opinions or conclusions, and the absent examiner's report is not admitted into evidence." *Id.* And as the State's brief seemingly concedes, Dr. Young did impermissibly testify as to Dr. Gill's conclusions and opinions regarding the autopsies.[3] Nevertheless, Appellant makes no

3. At trial, Dr. Young testified that "[u]pon examining the report of Dr. Gill and the other items that were presented to [him], [he] concurred with Dr. Gill's opinion as to the cause of death and as to the manner of death" with respect to victim Carmen Hunt. Likewise, Dr. Young testified that he agreed with the cause and manner of death determined by Dr. Gill with respect to victims Darci Williams and Claudette Juniel. Thus, Dr. Young did testify as to Dr. Gill's opinions and conclusions. We note, however, that where a medical examiner's testimony has amounted to improper hearsay evidence, the admission of such evidence has been subjected to harmless error analysis. *Fulton*, 353 S.W.3d at 455–56. In fact, the majority of Missouri courts have found the admission of such evidence "to be harmless where the defendant makes no challenge to the medical examiner's opinion as to the cause of death." *Id.* at 456. Here, Appel-

argument that his trial counsel was ineffective for failing to object to Dr. Young's testimony regarding Dr. Gill's opinions and conclusions. Appellant simply claims that his trial counsel was ineffective for entering into the stipulation with the State that Dr. Young could testify regarding the autopsies performed by Dr. Gill. Entering into such a stipulation, in and of itself, does not violate the Confrontation Clause and, therefore, cannot amount to a claim of ineffective assistance of counsel.

Furthermore, Appellant failed to establish that any prejudice resulted from Dr. Gill not testifying. Again, the movant must establish prejudice "by showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Cone*, 316 S.W.3d at 415 (internal quotation omitted). Appellant offers no explanation as to how the outcome of the trial would have been different had his trial counsel required Dr. Gill to testify.

Moreover, the evidence establishes that, as Trial Counsel Kenyon testified, there was no tactical advantage to having Dr. Gill testify instead of Dr. Young. Trial Counsel Dryden explained that cause of death was not at issue, and Dr. Young testified to and agreed with Dr. Gill's conclusions as to the three victims' cause and manner of death. Thus, Appellant has failed to establish he was prejudiced by his trial counsel stipulating that Dr. Young could testify as to the autopsies performed by Dr. Gill. Point denied.

In his second point, Appellant asserts that the motion court erred in denying his Rule 29.15 motion for post-conviction relief because he established that Trial Counsel Dryden was ineffective when she failed to object to Ruby Williams's testimony identifying Appellant as the person she saw

Darci Williams meeting with the last time she saw Darci alive. The motion court found that Appellant failed to demonstrate that "trial counsel's decision not to object to the issue regarding [Ruby Williams's] identification of [Appellant] . . . was anything short of sound trial strategy." Additionally, the motion court concluded that Appellant "did not show how he was prejudiced from the lack of objection, since the Court had already ruled on the admissibility of" the identification testimony.

■ "Ineffective assistance of counsel is rarely found in cases where trial counsel has failed to object." *Cornelious*, 351 S.W.3d at 44 (internal quotation omitted). Trial counsel's failure to object constitutes ineffective assistance of counsel only where the movant can establish that counsel's "failure to object was not strategic and that the failure to object was prejudicial." *Id.* (internal quotation omitted).

■ Here, the record supports the motion court's conclusion that Appellant failed to establish he was prejudiced by Trial Counsel Dryden's failure to object to the in-court identification. First, prior to trial, Appellant filed a motion to suppress "all testimony by said witnesses at the trial of this cause regarding in-court identification of [Appellant]." The trial court took Appellant's motion to suppress under advisement. During the prosecution's opening statement, the prosecutor began to discuss how Ruby Williams saw Darci meet Appellant the last time she saw Darci alive. At that time, Appellant's trial counsel and the trial court engaged in the following colloquy:

> Dryden: Your honor, at this point in time—I know it is opening statement. One of the issues we have not talked about is that we have never done a

lant's trial counsel testified that cause of

death was not at issue.

motion to suppress on [Ruby] Williams' identification of [Appellant].

The Court: I couldn't hear you over the coughing.

Dryden: We have never done an identification motion to suppress. We filed our motion to suppress on [Ruby] Williams. We were going to take it up with the case. I did want to object at this time to preserve it for the record and will be taking it up later. Can I have a continuing objection, Your Honor?"

The Court: Yes, you may.

Trial Counsel Dryden again raised the suppression issue prior to Ruby Williams testifying, but the objection was denied.

During direct examination, Ruby Williams testified that she saw Darci approach Appellant after she dropped Darci off on Prospect, which was the last time she saw Darci alive. Immediately following this testimony, Trial Counsel Dryden renewed her objection to Ruby Williams's identification of Appellant. The trial court acknowledged the objection. Ruby Williams then identified Appellant in court as the man she saw Darci meet on Prospect. Trial Counsel Dryden made no objection to the in-court identification.

Thus, our review of the record reveals that Trial Counsel Dryden made numerous and repeated attempts to prevent Ruby Williams from testifying and identifying Appellant as the last individual she saw Darci with prior to Darci's disappearance. Although Trial Counsel Dryden made no express objection to Ruby William's in-court identification of Appellant, Appellant offers no explanation as to how trial counsel failing to again renew the objection following the in-court identification prejudiced him. Thus, we cannot say the motion court clearly erred in finding no prejudice resulted from Trial Counsel Dryden's

failure to object to the in-court identification.

Furthermore, "[c]ounsel is not ineffective for failing to make non-meritorious objections." *Glass v. State,* 227 S.W.3d 463, 473 (Mo. banc 2007). To prevail on his claim that Ruby Williams's identification of Appellant was objectionable, Appellant has to "first demonstrate [that] the investigative procedures employed by the police were impermissibly suggestive and then [that] the suggestive procedures made the identification at trial unreliable." *Olds v. State,* 891 S.W.2d 486, 490 (Mo.App. E.D.1994). "A pretrial identification method is unduly suggestive when the identification results from police procedures or actions, rather than the witness' recall of first-hand observations." *Woodson v. State,* 215 S.W.3d 349, 354 (Mo.App. S.D.2007) (internal quotation omitted). "Identification testimony will be excluded only when the procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification." *Id.* (internal quotation omitted).

Appellant makes no argument that Ruby Williams's identification should have been suppressed due to suggestive police procedures or because her identification was unreliable. Rather, he contends only that an objection should have been made to the in-court identification. Thus, Appellant has failed to establish that any objection by trial counsel to the in-court identification would have been meritorious. Accordingly, Appellant failed to prove that Trial Counsel Dryden was ineffective for failing to object to the in-court identification. Point denied.

In his third point, Appellant contends that the motion court erred in denying his Rule 29.15 motion for post-conviction relief because trial counsel was ineffective for failing to call him as a witness during the suppression hearing

regarding the alleged *Miranda* violations. Appellant avers that, if he would have been called to testify, he would have informed the court that he agreed to speak with the police only because he thought that he was being investigated for an assault charge and that his requests for a lawyer were ignored by the police during the interrogation. Appellant further avers that had he testified at the suppression hearing, a reasonable probability exists that the trial court would have suppressed his statements to the police, including his statement that he did not know Sheliah McKinzie.[4]

▪▪▪ Appellant characterizes this point as trial counsel's failure to call him as a witness at the hearing. However, the decision whether to testify "is a personal right of the defendant that cannot be made by counsel." *Slater v. State*, 147 S.W.3d 97, 101 (Mo.App. W.D.2004). Nevertheless, "[a]lthough the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice" regarding his decision to testify. *Hurst v. State*, 301 S.W.3d 112, 118 (Mo.App. E.D.2010). Therefore, "trial counsel's advice whether to testify is [generally] a matter of trial strategy, and does not constitute a ground for post-conviction relief, absent exceptional circumstances." *Hickey v. State*, 328 S.W.3d 225, 231 (Mo. App. E.D.2010).

The motion court concluded that Appellant knew it was his decision whether he testified at the hearing and, at the advice of his counsel, he chose not to testify. The record supports the motion court's findings.

At the evidentiary hearing Trial Counsel Kenyon testified that he considered the possibility of calling Appellant to testify at the suppression hearing. He then testified that he and Trial Counsel Dryden advised Appellant that they did not believe it was wise for him to testify at the hearing and that Appellant decided not to testify based on that advice. During cross-examination, Trial Counsel Kenyon testified that he and Trial Counsel Dryden "explained to [Appellant] that it was his call to make, but [they] would expect that he would listen to whatever advice that [they] would give him and give it whatever weight he thought was appropriate." Likewise, Trial Counsel Dryden testified that she and Trial Counsel Kenyon discussed testifying at the suppression hearing with Appellant and that Appellant listened to their advice not to testify. Trial Counsel Dryden also testified that the decision whether to testify was made by Appellant. Even Appellant himself testified that he decided not to testify based upon the advice of his trial counsel.

The record, therefore, supports the motion court's finding that Appellant's trial counsel advised him not to testify and that he followed their advice. As previously explained, advice regarding whether a defendant should testify is generally a matter of trial strategy. Appellant makes no argument that trial counsel's advice not to testify was anything other than reasonable trial strategy. Thus, Appellant failed to establish his trial counsel was ineffective for failing to call him as a witness during the suppression hearing. Point denied.

Judgment affirmed.

All concur.

---

4. At the evidentiary hearing, Appellant and his trial counsel all testified that it would have been beneficial to the defense to suppress Appellant's statement regarding Sheliah McKinzie because Appellant's DNA was discovered on her body and the State used Appellant's statement that he did not know her as evidence of consciousness of guilt.